IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM BRUCK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHELE GORMAN, JOHN GORMAN,<br>and TRILUTIONS REAL ESTATE<br>GROUP, INC.,<br><br>　　　　　Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 15-252 (JBS/AMD)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

This matter comes before the Court on Plaintiff William Bruck's motion for default judgment. Bruck brought this suit against Defendants Michele Gorman, John Gorman, and their company, Trilutions Real Estate Group, Inc. ("Trilutions Real Estate"), after Defendants failed to pay the principal and interest of a loan Plaintiff made to them in the amount of $97,000, which was secured by a mortgage on Defendants' property. Plaintiff alleges that Defendants induced Plaintiff into making the loan by misrepresenting that the property was free and clear of any interests, and brings a breach of contract claim, as well as claims under the federal RICO statute, 18 U.S.C. § 1961 et seq., and under state law for fraud and for violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et seq. [Docket Item 1.] Because Defendants

have not answered or otherwise responded to Plaintiff's Complaint, Plaintiff now seeks default judgment against them under Fed. R. Civ. P. 55(b)(2).

On a motion for default judgment, the Court must review the Complaint to determine whether the unchallenged facts present a sufficient cause of action, and whether the circumstances render the entry of default judgment "proper." After examining Plaintiff's Complaint and the attached documents upon which the Complaint relies,[1] the Court finds that, because the Mortgage Note was executed only between Bruck and Michele and John Gorman and not Trilutions Real Estate, the Complaint fails to state legitimate claims against Trilutions Real Estate. With respect to Michele and John Gorman, the facts as currently presented fail to state claims under RICO and the NJCFA, but are sufficient to establish claims for breach of contract and common law fraud. The Court will therefore award damages in the amount of $137,782.68, along with $17,790.00 in attorney's fees and $1,219.71 in litigation costs.

---

[1] Because Plaintiff's Complaint is predicated upon the mortgage documents and correspondence between Defendants and Plaintiff regarding the mortgage, the two documents related to these matters submitted by Plaintiff will properly be considered by the Court. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999).

2

The Court finds as follows:

1.   William Bruck alleges that on or around January 4, 2013, he made a commercial loan through his Individual Retirement Account to Defendants in the amount of $97,000.00. The loan was secured by a mortgage on a house owned by Michele and John Gorman located at 6324-26 Magnolia Avenue in Pennsauken Township, New Jersey.[2] According to Bruck, the Gormans induced Bruck to make the loan via email solicitations by representing that the property was not encumbered by any liens, and Bruck relied upon the fact that he would receive a first mortgage lien on the property. (Compl. [Docket Item 1] ¶¶ 6-8.)

2.   The two-page Mortgage Note names Michele and John Gorman as borrowers but not Trilutions Real Estate Group, Inc., which is alleged to be a New Jersey corporation owned and operated by the Gormans. (Id. ¶ 3; Mortgage Note, Compl. Ex. A [Docket Item 1-2].) Under the terms of the Note, the borrower agrees to pay back the principal of $97,000.00 plus interest accruing at a rate of 12% on the unpaid principal, compounded yearly. The borrower also agrees to "make monthly payments at the Lender's address or at such other place as is designated by

---

[2] The property does not appear to be Defendants' primary residence, as the Complaint asserts that Defendants reside at 7027 Cooper Avenue in Pennsauken, New Jersey. (Compl. ¶ 1.)

the Lender," but the Note does not specify the amount of those payments. (Mortgage Note, ¶ 3.) The Note further states:

> The Borrower shall pay the principal and interest by making payments as follows: *Principal and interest paid in full when building is sold, or within 90 days of the lender giving notice to repay. Interest compounds yearly.*

(Id.) A late charge of "five percent (5%) of the late payment" is added if the payment is 10 days past the due date. (Id. ¶ 4.)

3.   The contract contains an acceleration clause which allows the lender to declare the entire principal and interest due "immediately" (1) if the borrower is more than ten days late on a payment; and (2) for "[a]ny cause that gives the Lender the right of acceleration under the Mortgage." If a suit is instituted to collect payment, the borrower is also required to pay for collection costs and reasonable attorney's fees. (Id. ¶ 8.) The agreement requires all notices under the Mortgage Note to be in writing and delivered in person or through certified mail. (Id. ¶ 12.)

4.   The Note contains signature lines for Michele Gorman and John Gorman and appears to be signed by both parties. Trilutions Real Estate does not appear to be a party to the Mortgage Note. (See Mortgage Note, at 2.)

5.   Bruck alleges that on January 15, 2014, approximately a year after the Mortgage Note was executed, he informally

4

advised Michele Gorman via email that he wanted to terminate the loan. Gorman responded that the loan would be paid in full by April 15, 2014. (Compl. ¶ 11.)

6.   Bruck did not receive a check and on September 19, 2014, Bruck's counsel sent Defendants by certified mail a formal written demand for repayment, demanding repayment of the full principal plus interest on or before December 22, 2014. (Id. ¶¶ 12-13; Compl. Ex. B [Docket Item 1-3].) The letter, addressed to Michele Gorman, John Gorman, and "(Trilutions Real Estate Group)," stated that $116,835.73 was currently due on the Note and that the Gormans will owe an additional $2,997.66 in interest (calculated at $31.89 per day at the 12% rate) if they waited until December 22nd to pay. (Compl. Ex. B.)

7.   Bruck never received payment. While performing a title and judgment search on the Gormans' property in preparation for foreclosure proceedings, he discovered that, contrary to what Defendants had told him, a prior mortgage was attached to the property. The 2007 mortgage to another lender was senior to Bruck's, and was "in an amount apparently exhausting almost all (if not all) of the owners' equity in the property." (Id. ¶¶ 14, 17.)

8.   Plaintiff filed this action against the Gormans and Trilutions Real Estate Group shortly thereafter on January 13,

2015, seeking a judgment against Defendants for defaulting on their mortgage (Count One) and bringing a federal RICO claim, 18 U.S.C. §§ 1962 (Count Four), a consumer fraud claim under N.J.S.A. § 56:8-1 et seq., (Count Two), and common law fraud claims (Count Three). Following Defendant's failure to answer, move, or otherwise respond to Plaintiff's Complaint, the Clerk of Court entered default on February 11, 2015. The pending motion followed.

9.    Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading. See Fed. R. Civ. P. 55(b)(2); see also Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Before granting default judgment, a court must determine: (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a sufficient cause of action, and (3) whether the circumstances otherwise render the entry of default judgment "proper." Teamsters Health & Welfare Fund of Phila. v. Dubin Paper Co., No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted). A party seeking default judgment is not entitled to relief as a matter of right;

the Court may enter default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012) (internal quotations and citation omitted).[3]

10. The Court begins by noting that jurisdiction is proper. The Complaint alleges that Defendants Michele and John Gorman are New Jersey residents, and Trilutions has a principal place of business in Cherry Hill, New Jersey. (Compl. ¶¶ 1-3.) In addition, service was successfully effectuated against all three Defendants by personal service upon an authorized agent at Trilutions' place of business in New Jersey. [See Docket Item 3.] Because the Defendants are residents of New Jersey and service was through an in-person agent in New Jersey, the Court's exercise of personal jurisdiction is proper. See Fed. R. Civ. P. 4(e)(2)(C) (individual may be served by delivering a copy of each to an agent authorized by appointment or by law to

---

[3] Because the entry of default prevents a plaintiff's claims from being decided on the merits, the Third Circuit has noted that it "does not favor entry of defaults or default judgments." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984). Thus, while "the entry of default judgment is left primarily to the discretion of the district court," this "discretion is not without limits," and cases should be "disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

receive service of process); N.J. Ct. R. 4:4-4(a)(6)(authorizing jurisdiction over corporate defendant by personal service upon authorized agent of corporation at registered office of the corporation); see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2053-54 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place," such as the place of incorporation or principal place of business) (quoted with approval in Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014)).[4]

11.  However, the Court finds that the undisputed facts fail to allege legitimate claims against Trilutions Real Estate. First, Bruck's claim of "Default on Mortgage Note" (Count One) is essentially a breach of contract claim. However, it is readily apparent from the Mortgage Note Bruck attaches to his Complaint that Trilutions Real Estate was never a party to the loan. The Note lists only "Michele Gorman" and "John Gorman" under "Borrower," provides signature lines only for those two

---

[4] Because the Complaint contains a cause of action under the federal RICO statute, 18 U.S.C. § 1961 et seq., the Court also has subject matter jurisdiction under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

individuals, and is signed only by the Gormans.[5] It is, of course, axiomatic that "one who is not a party to a contract cannot maintain a suit for breach of duty arising out of the contract." In re Nat'l Molding Co., 230 F.2d 69, 72 (3d Cir. 1956). Here, because Trilutions Real Estate is not listed as a borrower on the Note, no action may be maintained against it for breach.

12.   In fact, the Court can find nothing in the Complaint to suggest how Trilutions Real Estate is involved in this or any previous transaction, and consequently can find no basis for its liability under any of the Counts. Trilutions Real Estate is not mentioned anywhere in the loan document, nor is there any allegation that the Gormans' company also holds an interest in the property that is the subject of the Mortgage Note. On the contrary, Paragraph Six of the Complaint states that the mortgage was conferred "by the Defendants John and Michele Gorman on premises *owned by said Defendants* located at 6324-26 Magnolia Avenue. . . . ." (Compl. ¶ 6.) Thus, Plaintiff himself

---

[5] Although the address listed for the Gormans in the Mortgage Note appears to be the address for their company, the fact remains that the borrowers of record are Michele and John Gorman, and not Trilutions Real Estate. There is no indication that, aside from using the company's address, the parties intended the loan to be executed on behalf of the Gormans' company.

alleges that the property is owned only by the Gormans. The Complaint alleges without specifying the defendants, that "Defendants had in 2007 conferred at least one prior mortgage lien" to another lender. (Compl. ¶ 17.) Given that the property is owned personally by the Gormans and not by their company, the Court cannot assume that Trilutions Real Estate was a party to the first mortgage lien. Finally, there is nothing in the Complaint to suggest that Trilutions Real Estate was somehow involved in the Gormans' false assurances to Bruck about that Bruck would hold the first-lien mortgage on the property at issue. The alleged misrepresentations about payment, for example, was made by Michele Gorman. (See Compl. ¶ 11.) In short, while the Complaint lists the Gormans' company as a Defendant, the attached Mortgage Note and the factual allegations indicate that only Michele and John Gorman have actual interests in the property, were parties to the Mortgage Note executed with Bruck, and were involved in the alleged deception. Because the Complaint lacks any specific allegations about the Gormans' company and its role, the Court cannot conclude that Plaintiff has alleged sufficient facts to maintain any action against Trilutions Real Estate.

13. With respect to the causes of action against the Gormans, the Court begins by noting that the Complaint does not

contain a legitimate cause of action against the Gormans for racketeering under 18 U.S.C. § 1961 et seq. The Supreme Court has explained that the basic purpose of RICO is to "protect[] a legitimate 'enterprise' from those who would use unlawful acts to victimize it" and to "protect[] the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle'" through which unlawful activity is committed. Cedric Kushner Promotions, Otd. v. King, 533 U.S. 158, 164 (2001). RICO thus makes it unlawful for any person "employed by or associated with any enterprise engaged in" interstate commerce to participate in the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). The enterprise is the "vehicle through which the unlawful pattern of racketeering activity is committed," Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994), and may be a legitimate business organization or a group of persons associated together for a common purpose of engaging in a course of conduct. United States v. Turkette, 452 U.S. 576, 583 (1981). The pattern of racketeering activity, on the other hand, is a series of criminal acts defined by the RICO statute. To plead a RICO claim under § 1962(c), the plaintiff must allege "(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the

enterprise; (3) that the defendant participated . . . , either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity." United States v. Irizarry, 341 F.3d 273, 285 (3d Cir. 2003); see also In re Insurance Brokerage Antitrust Litig., 618, F.3d 300, 362 (3d Cir. 2010). A "pattern of racketeering activity" requires at least two acts of racketeering activity committed within ten years of each other. 18 U.S.C. § 1961(5).

14.   The Complaint contains virtually no facts about Defendants' "enterprise," the Trilutions Real Estate Group. Instead, Plaintiff's case, boiled down to its well-pled factual allegations, essentially accuses two individuals for misrepresenting the value of their property and deceiving Plaintiff into giving them a personal mortgage. Even assuming that the allegations sufficiently plead a "pattern of racketeering activity," there are no allegations whatsoever to support that the Gormans acted through their company to commit the alleged pattern of fraud, nor, in fact, anything to suggest even a nexus between the alleged fraud and the Trilutions Real Estate Group. It is apparent from even a cursory examination of the Complaint that Plaintiff has not made out a cause of action against the Gormans for a violation of RICO. See South Broward

12

Hosp. Dist. v. MedQuist Inc., 516 F. Supp. 2d 370, 390 (D.N.J.
2007) (Simandle, J.) (complaint failed to state claim for RICO
violation because plaintiffs did not allege facts showing that
company played a role in the racketeering activity that was
"distinct" from the RICO "enterprise" consisting of parent and
its subsidiary.)

    15.  Nor does it appear that Plaintiff has a legitimate
cause of action against the Gormans for violation of the
Consumer Fraud Act, under the facts currently alleged. Unlike a
traditional fraud claim, the NJCFA is intended to protect
"unconscionable *commercial* practices," N.J.S.A. 56:8-2 (emphasis
added), and therefore allows recovery of treble damages. New
Jersey courts have repeatedly noted that the Act was intended as
a response only to the public harm resulting from the
"deception, misrepresentation and unconscionable practices
engaged in by professional sellers seeking mass distribution of
many types of consumer goods." Kugler v. Romain, 279 A.2d 640,
648 (N.J. 1971); see also DiBernardo v. Mosley, 502 A.2d 1166,
1167 (N.J. Super. Ct. App. Div. 1986) (emphasizing that in
passing the NJCFA, the legislature was concerned with
"combat[ing] the increasingly widespread practice" of "deceptive
and fraudulent advertising and selling practices."). Although
the NJCFA covers fraud in connection with real estate

transactions, see N.J.S.A. § 56:8-2, it was not meant to cover individual sales of a parcel of real estate, particularly the "normal sale of real estate by a homeowner." DiBernardo, 502 A.2d at 1168. Thus, the Appellate Division in DiBernardo, after reviewing the legislative history of the Act, held that the NJCFA did not apply to the fraudulent concealment of a defective septic system within a home sold by defendants to plaintiffs. Id. at 1168; see also 539 Absecon Blvd., L.L.C. v. Shan Enterprises Ltd. Partnership, 967 A.2d 845, 865 (N.J. Super. Ct. App. Div. 2009) (noting that New Jersey courts "have adopted a limited construction of the Act's applicability to real estate transactions" and also that Kugler's language "alluding to 'professional sellers seeking mass distribution' of their goods, has been frequently cited when our courts have had to address the statute's intended reach.")

16.   As noted above, the complained-of deception here is connected to the execution of a mortgage loan of a single piece of property between three private parties, Bruck and Michele and John Gorman. Without any allegation that the Gormans were acting on behalf of Trilutions Real Estate Group, a professional seller of real estate, or were themselves acting in a professional, "commercial" capacity as real estate brokers or real estate agents, the Court is unable to conclude that Defendants' alleged

14

unlawful conduct constitutes an unconscionable *commercial* practice for Plaintiff's claim to fall within the ambit of the NJCFA. See Byrne v. Weichert Realtors, 675 A.2d 235, 239-40 (N.J. Super. Ct. App. Div. 1996) (NJCFA applies to a professional seller of real estate or to salespersons representing professional sellers of real estate and not to "the homeowner who sells a house in the normal course of events."). Because Plaintiff has failed to establish the essential elements of the claim, the Court finds that default judgment is not warranted.

17.  The Court will, however, grant the motion for default judgment on the breach of contract claim, titled "Default on Mortgage Note" (Count One), and the common law fraud claim (Count Three). In New Jersey, a plaintiff must allege three elements to state a claim for breach of contract: "(1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach." Lee v. A to Z Trading LLC, 2014 WL 7339195, at *2 (D.N.J. Dec. 23, 2014). The unchallenged allegations in Plaintiff's Complaint show that Bruck executed a valid mortgage contract with the Gormans; the Gormans breached Paragraph 3 of the Mortgage Note when they failed to pay the full outstanding principal and interest within 90 days' of receiving formal notice for repayment; and Bruck was injured as a result of

Defendants' failure to pay. Thus, the Court finds that Plaintiff has stated a sufficient cause of action for breach of contract.

18.   The allegations also support a claim for fraud under New Jersey common law. To make out a fraud claim, a plaintiff must generally show: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981). The undisputed facts demonstrate that all five elements have been met, even in light of the heightened pleading requirements for fraud claims under Fed. R. Civ. P. 9(b). The Gormans made a material misrepresentation to Bruck when they stated that there were no encumbrances on the property, and intended Bruck to rely upon it in order to secure a loan. The fact that the Gormans had executed a prior mortgage on the same property just six years before entering into the loan agreement with Bruck suggests that the Gormans knew their statement was false. Finally, Bruck has been injured because he has been unable to recover against the Gormans for their default under the mortgage. Accordingly, the Court finds that Plaintiff has stated a legitimate cause of action for fraud under Count Three.

19.   Although Plaintiff has stated a legitimate cause of action for fraud and breach of contract, the Court must still determine whether the circumstances otherwise render the entry of default judgment "proper." See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987). The Court finds that they do. First, Plaintiff has already been prejudiced by Defendants' inaction and will be prejudiced if default judgment is not granted. Bruck alleges that the Gormans have yet to pay any of the principal, interest, or fees due even though Bruck sought repayment of the full amount a year ago. Moreover, even though Bruck wishes to exercise his right under the Note to foreclose on Defendants' property, he has been unable to do so because of the prior mortgage on the property. If default judgment is not granted, Plaintiff will likely not obtain prompt relief on the defaulted mortgage. Second, there is nothing in the current record to indicate that Defendants have a meritorious defense to Plaintiff's claims. It is readily apparent from the unchallenged facts and from the Mortgage Note itself that that Defendants secured a loan from Plaintiff on equity they did not have, and breached the loan agreement by failing to pay. Nothing in the present record suggests that Plaintiff's reliance upon Defendants' misrepresentation was unreasonable, or that the loan agreement was invalid. Finally, the Court notes that Defendants

17

were served, through their authorized agent, with the Complaint in January of this year and are fully aware of the claims against them, yet to date, eleven months later, have never responded to or defended against Plaintiff's claims, nor have they even entered an appearance in this case. Defendants may be presumed culpable for their inaction. See Teamsters Health & Welfare Fund of Phila. v. Dubin Paper Co., 2012 WL 3018062, at *4 (D.N.J. July 24, 2012) (Simandle, J.) ("Defendant's failure to answer demonstrates Defendant's culpability in its default"); Slover v. Live Universe, Inc., No. 08-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) (Defendant is also presumed culpable where it has failed to answer, move, or otherwise respond"). These factors all weigh in favor of granting the relief Plaintiff has requested. Accordingly, the Court will enter default judgment on Counts One and Three against Michele Gorman and John Gorman.

20. The Court next turns to the question of damages.[6] The total amount that has accrued between January 14, 2013 and the date of today's opinion, December 23, 2015 (a period of 2 years

---

[6] Plaintiff's calculation of $126,698.60 is based on the amount amount owed up to March 20, 2015. (See Bruck Cert. in Support of Mot. for Default J. [Docket Item 5-1] ¶ 9.) The Court calculates the total damages based on the amount owed up to the date of today's opinion.

11 months and 9 days, or 1073 days), using the rate of 12% simple interest per annum and an initial principal of $97,000, is $131,221.60.[7] In addition, the Mortgage Note provides that a late fee of 5% of the outstanding balance, or $6,561.08, shall be added. (Mortgage Note ¶ 4.) The total amount owed under the Mortgage Note as of December 23, 2015 is therefore $137,782.68, and the Court will accordingly award that amount in damages to Plaintiff.

21.  Plaintiff also seeks $1,219.71 in costs and $17,790.00 in attorney's fees. (Heck Cert. in Support of Mot. for Default J. [Docket Item 5-2] ¶ 7.) The Note provides for shifting the lender's attorney's fees, to be paid by the borrowers, as stated in Paragraph 8(b): "If suit is started to collect this amount, the Borrower shall pay for the Lender's costs of collection and reasonable attorney's fees." [Docket Item 5-1 ¶ 8(b).] The starting point for this Court's determination of reasonable attorney's fees is the lodestar calculation, which is the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate. United Auto. Workers Local 259 Soc.

---

[7] The Court's calculation uses the standard simple interest equation $A = P(1 + r*t)$, where P is the principal at $97,000, r is the yearly interest rate at 0.12, and t is the total time, in years, at 2.94 (1073 days/365).

Sec. Dept. v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir. 2007).

A request for fees must be accompanied by "fairly definite

information as to hours devoted to various general activities,

e.g., partial discovery, settlement negotiations, and the hours

spent by various classes of attorneys." Id. at 291 (quoting

Evans v. Port Auth., 273 F.3d 346, 361 (3d Cir. 2001)).

Moreover, "where the documentation of hours is inadequate, the

district court may reduce the award accordingly." Id. (quoting

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

22.   The Court has reviewed the 12-page billing record from

Plaintiff's attorney, Todd W. Heck, Esq., containing over a

hundred entries memorializing the work spent on this case (see

Heck Invoice [Docket Item 3-2]), and notes that it contains

sufficient detail to determine whether the fees and costs are

reasonable. See Teamsters Health & Welfare Fund of Phila., 2012

WL 3018062, at *5. The affidavit filed by Mr. Heck asserts that

the $19,009.71 reflects a total of 59.3 hours of work on this

matter at a rate of $300.00 per hour. Having examined the

itemized invoice submitted by Mr. Heck, the Court is satisfied

that the work described in the entries do not appear to be

"excessive, redundant, or otherwise unnecessary," and that 59.3

hours of work is reasonable in light of the nature of the case

and the services rendered over the course of a year. Interfaith

Cmty Org. v. Honeywell Intern., Inc., 426 F.3d 694, 711 (3d Cir.
2005); see also Hoover v. A & S Collection Assoc., Inc., No. 13-
5852, 2014 WL 2711036, at *4 (D.N.J. June 16, 2014) (noting that
a rate of $325 per hour was reasonable).

23.  The Court finally turns to the litigation costs.
According to the billing statement submitted by Mr. Heck, the
majority of the costs were incurred for legal research, title
searches on the property, service of process, photocopying, and
the filing of the Complaint. (See Heck Invoice, at 12.) The
Court therefore finds that $1,219.71 is a reasonable amount for
litigation costs.

24.  For the reasons stated above, the Court will grant
Plaintiff's motion for default judgment on Counts One (breach of
contract) and Three (common law fraud) against Michele Gorman
and John Gorman only, and will award damages in the amount of
$137,782.68, along with $17,790.00 in attorney's fees and
$1,219.71 in litigation costs, for a total of $156,792.39,
without prejudice. Default judgment will be denied against
Michele and John Gorman on Counts Two (New Jersey Consumer Fraud
Act) and Four (federal RICO), and will be denied in its entirety
against Defendant Trilutions Real Estate. Should Plaintiff
choose to amend his Complaint to cure the deficiencies noted in
these counts, Plaintiff must serve the Amended Complaint upon

these defendants and may move again for entry of default and default judgment on those claims if Defendants fail to answer the Amended Complaint, at the appropriate time. An accompanying Order will be entered.


**December 22, 2015**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          Chief U.S. District Judge